# Richmond

## J. D. WEATHERMAN v. COMMONWEALTH.

January 15, 1931.

Present, Prentis, C. J., and Campbell, Holt, Hudgins and Gregory, JJ.

*W. L. Joyce, F. P. Burton, Hooker & Sanford* and *S. A. Thompson,* for the plaintiff in error.

*John R. Saunders, Attorney-General,* and *Edwin H. Gibson,* and *Collins Denny, Jr., Assistant Attorneys-General,* for the Commonwealth.

PRENTIS, C. J., delivered the opinion of the court.

The accused, a justice of the peace, has been convicted of a felony and sentenced to four years confinement in the penitentiary. The indictment is based upon Code, section 4497, and charges the accused with having gone out of Patrick county into Surry county, North Carolina, and having there unlawfully and feloniously accepted ninety dollars as and for a bribe for the release of one Arthur Joyce from trial and punishment upon the charge of unlawfully transporting ardent spirits in Patrick county.

The only question we are asked to determine is that presented by the assignment of error claiming that the evidence is insufficient to support the conviction.

These are the unquestioned facts: Weatherman, the accused, a justice of the peace of fourteen years standing, was approached by James Joyce, the father of Arthur Joyce, on January 30, 1929, Arthur Joyce having successfully eluded the officers of Patrick county who were pursuing him under the charge that he was then transporting ardent spirits unlawfully in Patrick county. The father understood from his conversation with Weatherman that for $100 the matter could be settled, whereas if the matter went to trial and his son should be convicted it would cost $150 and his son would probably be sent to jail. The next day, January 31st, Weatherman went to Mt. Airy, Surry county, North Carolina, and received from Arthur Joyce the sum of ninety dollars with the promise that he would bring ten dollars more. No account to the Commonwealth for this sum was made by the accused, Weatherman.

His defense was that he acted in good faith, and that the

$100 which he proposed to accept was intended to be in lieu of bail for Arthur Joyce.

There is much testimony in the case which discredits this claim and supports the conclusion of the jury.

James Joyce, the father of Arthur Joyce, testified that he came up to Virginia January 30, 1929, to see what could be done about it, and went to see the accused, Weatherman, who was a justice of the peace living in the community in which his son had been accused. He told Mr. Weatherman about the accusation, and asked him "if the matter could be settled so that my son would not have to go to jail." He testified that Weatherman told him that "if the matter went to a trial and the boy was convicted, it would cost him $150, and probably a jail sentence, but he said there was ways of 'whipping the devil around the stump,' and that it could be fixed, if it was his first offense, for $100." The witness said he had no thought of bribing or offering to bribe Weatherman, but on cross-examination the witness also stated that no mention was made by Weatherman of putting up a cash bond.

Arthur Joyce testified that he did not go back up into Virginia, but sent his father to see about it. Weatherman, in the interview with Arthur Joyce the next day, according to Arthur Joyce, repeated much of the language he had used to James Joyce on the previous day, among other things, that "there was lots of ways to 'whip the devil around the stump.'" Upon the payment of the ninety dollars by Arthur Joyce, January 31, 1929, Weatherman gave this receipt: "Received of Arthur Joyce ninety dollars. (Signed) J. D. Weatherman." It is observed that there is nothing to mark this receipt as an official act of Weatherman as justice of the peace of Patrick county. He signed it without any official designation; nor is there any indication in the receipt that Arthur Joyce was charged with crime, or that the ninety dollars was accepted in lieu of a bail bond. Arthur Joyce had never been arrested.

Arthur Joyce testified that he did not receive any letter from Weatherman asking him to come up and pay the ten dollars. He testified that along in the fall he was told that nothing had ever been done about his case, and that he could get his money back. Then he went to an attorney in North Carolina and told him the circumstances, and employed him to recover the amount. He also testified that he was not trying to bribe the justice, but wanted to get out of it the best way he could, and upon cross-examination stated that the money was neither paid nor put up for a bond.

Elmer E. Boyd, an officer, testified that he, along with Walter Willis, a constable of Patrick county, on January 29, 1929, chased two negroes who were transporting ardent spirits through that county; that they dropped the spirits; and that James Joyce came with Walter Willis to see him about the case against his son, Arthur Joyce, and they told him (James Joyce) that they did not recognize the parties. Some time thereafter, according to Boyd, the witness, he and Willis went to Weatherman, and Weatherman told him that the negro's case had been settled; that he, the witness, understood that Weatherman was alluding to Arthur Joyce; that Weatherman paid him twenty dollars, stating that it was costs in the Joyce case. He also testified that he had no costs in the Joyce case, and that after this trouble arose the constable, Willis, gave him twenty dollars and asked him to take it to Weatherman; that he did so, and that Weatherman refused to accept the money, and asked: " 'What do you reckon Walter Willis will say about it?' and I replied that I did not know. Mr. Weatherman stated that Mr. Willis did not owe him anything." He, the witness, took the money back to Willis, who refused to receive it, and he, Boyd, has it now. The witness also testified that Weatherman had been justice of the peace for fourteen years; that he had paid him fees at various times and was owing him costs at the time, but that the

twenty dollars was paid him in settlement of the case against Arthur Joyce.

Walter Willis, the constable referred to by Boyce, testified to the same facts substantially. He says the reason he sent the twenty dollars back to Weatherman was because some time thereafter, after the trouble had arisen, he was at a store at Mt. Airy, N. C., and was told somebody was going to get into trouble about the Arthur Joyce case; and that he (Constable Willis) decided to send the money back as he was afraid he would have trouble about it. He also testified that he did not accept the twenty dollars as costs in the Joyce case, because he did not have any costs in the Joyce case; that Weatherman did not say it was costs in the Joyce case, but said "here is your costs."

The accused, Weatherman, and his son denied all of these incriminating circumstances just recited, but, of course, the jury had the right to discredit their denials. Weatherman testified that he wrote two letters to Arthur Joyce about the matter but received no reply, and has no copies of them. He does produce copies of two letters which tend to support his claim that he accepted the money in lieu of a bail bond, the first one of which, however, is dated June 9th, and the second August 17th, which it is observed was long after the transaction of January 31, 1929, in Mt. Airy, N. C., when and where he received the ninety dollars. He testified that it was his practice as justice of the peace to come to the court house once each month and settle with the clerk for fines and costs, and that he explained to Taylor, the clerk, about this bond; and that Taylor suggested that he keep the money until he collected the other ten dollars and then account for it to Taylor. Taylor, however, testified that he has no record of any criminal warrant against Arthur Joyce; that he examined the records of Patrick Circuit Court and found no record of any forfeited recognizance returned by J. D. Weatherman against Arthur Joyce for

violation of the prohibition law; that once when he was busy Weatherman mentioned to him that he had not completed his report, but he could not say that Weatherman mentioned any special case to him; and that in none of his reports did he ever say that ninety dollars had been received from Arthur Joyce.

That the accused went after and accepted the money from Arthur Joyce, who had never been arrested, and was then in North Carolina, out of his jurisdiction, suggests a criminal purpose, while the form of the receipt, the initial concealment of the facts, the failure to report and account for the money, its subsequent division with Boyd and Willis, who had attempted to arrest Joyce, all point with unerring significance to his guilt. The incriminating testimony is not inconsistent with the admitted facts, and if true, establishes the crime charged.

The case was submitted to the jury upon proper instructions. Had they credited his disclaimer of any criminal intent, they would, under the instructions of the court, which were favorable to him, notwithstanding the gross irregularity of the transaction, have acquitted the accused. That they did not do so is no cause for surprise, for the evidence introduced by the Commonwealth is sufficient to support the conviction.

*Affirmed.*